Argued at Pendleton October 27, 1937; reversed January 11; rehearing denied February 8, 1938

# FOLEY ET UX. *v.* BOUVY ET AL.

(75 P. (2d) 14)

In Banc.

*R. J. Green*, of La Grande (Green & Hess, of La Grande, on the brief), for appellants.

*S. H. Burleigh*, of La Grande (Burleigh & Burleigh, of La Grande, on the brief), for respondents.

BAILEY, J.   This suit was brought by the plaintiffs, Jerome J. Foley and Mary Foley, his wife, against the defendants, Henrietta A. Bouvy and Lee B. Bouvy, her husband, for an accounting of rentals, both crop and cash, received by the defendants in 1936 from certain agricultural lands situate in Union county, Oregon. From a decree in favor of the plaintiffs, the defendants prosecute this appeal.

In 1915 Johanna Gangloff, a widow, was the owner of 480 acres of land in Union county, Oregon, and under date of June 9, 1915, she executed a deed to her grandson, Patrick A. Foley, for said land, which deed was

not recorded until April 26, 1920. According to the record, Mrs. Gangloff intended that this land should be held by her grandson, Patrick, for himself and his brother, Jerome J. Foley, and his sister, Henrietta A. Bouvy, to each an undivided one-third interest. By deed dated September 16, 1922, and recorded November 21 of that year, Patrick conveyed to his brother Jerome and to his sister Henrietta each an undivided one-third interest in the 480 acres conveyed to him by Mrs. Gangloff. In the following year Henrietta A. Bouvy acquired her brother Patrick's undivided one-third interest in the property.

Under date of May 10, 1924, the parties to this litigation entered into the following contract:

"* * * That whereas Jerome J. Foley is the owner of an undivided one-third interest and Henrietta A. Bouvy is the owner of an undivided two-thirds interest in and to that certain real property described as S½ of SW¼ of Section 10, NW¼ and N½ of SW¼, Section 15, and the NE¼ of Section 16, Twp. 2 south, range 39, E. W. M. Union county, Oregon, and it is the desire of the parties hereto that the titles be segregated and divided among them at the present time for the purpose of allowing the parties to this contract to obtain loans upon the separate tracts but it is further desired by the parties hereto that the total valuation of the said property as described shall still belong to the said parties in the proportionate parts as hereinbefore set forth, to-wit: one-third and two-thirds, and the annual rental received from the said property shall be divided as set forth and the entire property shall be treated as one property for the purpose of rental by the said parties or sale, and no rental or sale shall be made by either party of the separate parts that are deeded to the separate parties under this contract but the entire tract shall be treated in entirety for all purposes both of rental and sale, and the payment of taxes against the same, and any rental thereof or sale thereof

shall be made by mutual consent of the parties hereto and not otherwise and the proceeds of such rental or sale shall be divided in the proportion as hereinbefore set forth, to-wit: one-third to Jerome J. Foley and two-thirds to Henrietta A. Bouvy.

"In witness whereof, the parties hereto have hereunto set their hands and seals to this and another instrument of the same tenor and date. * * *"

On the same date the parties hereto executed deeds conveying to Jerome J. Foley, Henrietta A. Bouvy and Lee B. Bouvy 160 acres each, of the 480 acres mentioned in the foregoing agreement. On or about May 24, 1924, each of the said grantees procured a loan of $5,000 from the state land board, the separate loans secured by the lands conveyed to the respective grantees above named. The division of the 480 acres was made, according to the testimony, in order to enable the three owners to obtain a loan of $5,000 each from the state land board, inasmuch as by the rules of that board not more than $5,000 could be loaned to any one individual.

Under date of October 1, 1925, the entire tract of 480 acres was leased to Enoch Johnson. During 1926, the first crop year that Johnson had possession, only a part of the land, to-wit, that owned by the Bouvys, was farmed by Johnson, for the reason that the other tract had been summer-fallowed by a previous lessee. According to the lease Johnson delivered at a designated elevator for the lessors two-fifths of the wheat grown on the land, and paid a cash rental for the land sown to alfalfa and grass. From and including 1924 to and including 1935 the rental for the entire 480 acres was received by Dr. Bouvy and one-third thereof paid to Jerome J. Foley.

According to the evidence, the annual crops to which the agreement of May 10, 1924, referred, with the ex-

ception of grass and alfalfa, were harvested in alternate years from the land formerly (until May 9, 1936) owned by the plaintiff Jerome J. Foley and from that owned by the defendants. From 1924 to 1935, both years inclusive, there were twelve wheat crops harvested, six from Jerome J. Foley's land and six from the land or part of the land owned by the defendants.

In 1936, the year for which an accounting is asked, the only land from which any return was had by Johnson was that owned by the defendants. No crop whatever, wheat, alfalfa or grass, was grown on the 160 acres deeded to Jerome J. Foley. The landlords' share of the wheat grown that year was turned over to Dr. Bouvy and from it he realized $3,218.56. He also received as cash rental for the land sown to alfalfa and grass $340.86, or a total of $3,559.42. The decree against the defendants and in favor of the plaintiffs was for one-third of that amount or $1,186.47.

The defendants repaid to the state land board the loans made to them, and they have paid each year the taxes due on the land standing in their names. The plaintiff Jerome J. Foley, however, has failed to repay any part of the principal of the loan obtained by him from the state land board, and has failed to pay the taxes on the land payable in 1929 and in subsequent years, with the exception of one-half the taxes payable in 1931.

On March 21, 1932, the plaintiffs executed to the First National Bank of La Grande a mortgage in the sum of $12,500, covering the 160 acres standing in the name of Jerome J. Foley and in addition an undivided one-half interest in a lot in La Grande. This mortgage was assigned to the First National Bank of Portland in 1935. In the same month and year the plaintiffs also executed a mortgage to Mary T. Foley, Jerome's

mother, for $6,575.84, on the two pieces of property covered by the mortgage to the bank. In December, 1935, the First National Bank of Portland instituted proceedings against the plaintiffs herein to foreclose the mortgage given to the First National Bank of La Grande; and on May 9, 1936, the property covered by that mortgage was purchased by the bank at the sale on said foreclosure, subject to the mortgage to the state land board. Early in 1936 the state land board also instituted a suit to foreclose its mortgage on the 160 acres standing in the name of Jerome J. Foley, and purchased the property at sale on June 3, 1936.

■ The First National Bank of Portland, by purchasing the land on execution in the foreclosure proceedings, became entitled to possession thereof on the date of the sale, to-wit, May 9, 1936, subject to the rights of the lessee, Enoch Johnson: § 3-510, Oregon Code 1930. The state land board, however, succeeded the bank to the right of possession of this tract, also subject to the rights of Enoch Johnson, on purchasing the property on execution June 3, 1936.

It is somewhat difficult to understand the intention of the parties in the execution of the contract between them under date of May 10, 1924, a copy of which is hereinabove included. A casual reading of this instrument might lead to the conclusion that the parties to it intended that the entire 480 acres should be considered as held by Jerome J. Foley and his sister, Henrietta A. Bouvy, as tenants in common, to the former an undivided one-third interest and to the latter an undivided two-thirds interest, regardless of the deeds of conveyance executed by the parties to the contract.

One of the contentions advanced by the plaintiffs in the trial court and reasserted on this appeal is that prior to the execution of the deeds whereby the 480

acres of land were subdivided into three tracts of 160 acres each, Jerome J. Foley and Mrs. Bouvy were tenants in common of the entire 480 acres; that in executing their deeds pursuant to the contract of May 10, 1924, this relationship was not changed; and that Jerome J. Foley is still the owner of an undivided one-third interest in the remaining 320 acres of land, one-half of which stands of record in the name of Henrietta A. Bouvy and the other half in the name of her husband, Lee B. Bouvy.

It is suggested by the plaintiffs that it is not necessary to determine the question of the ownership of the remaining 320 acres of land in order to affirm the decree. This matter, however, according to our view of the case, is one of the controlling factors in determining the plaintiffs' right to an accounting. In addition, it is advisable, in order to prevent protracted litigation in the future between these parties, to decide on this appeal, if possible, the question of whether or not the transaction between them in any way changed their status respectively as tenants in common in ownership of the land which was the subject of their contract.

■ It is conceded by all the parties concerned that the division of land was made between the parties in 1924 in order to permit the record owner of each 160-acre tract to obtain a loan of $5,000 from the state land board. Not any of the money borrowed from the state land board by the parties was, so far as the record discloses, used by them in improving the farm lands. There is nothing in the record to indicate that Jerome J. Foley obtained the consent of the defendants when he placed the additional mortgages on the property standing in his name.

By so incumbering his tract beyond the amount mutually agreed upon by the parties and permitting the

property to be sold on execution, Jerome J. Foley should be, and is, precluded from asserting that the deeds between the parties are other than they purport to be, instruments effecting a partition of the lands theretofore held by the parties in common. In other words, since he has treated the tract standing in his name as his individual property and not as land in which he had only an undivided one-third interest, Jerome J. Foley should not now, after depriving his sister of any and all interest in that tract, be heard to say that he is the owner of an undivided one-third interest in the remaining 320 acres.

■ In their complaint the plaintiffs ask for an accounting by the defendants, based on the contract of 1924. This contract as construed most favorably to the plaintiffs is in effect nothing more than an agreement of partnership, joint venture or joint undertaking. To carry it into effect it was necessary that all parties to it retain ownership, control and possession of their respective holdings that comprised the 480 acres. The contract provides that the entire 480 acres "shall be treated as one property for the purpose of rental".

In January, 1935, Jerome J. Foley and the defendants entered into an agreement with Enoch Johnson, in which it is recited that the parties thereto "agree to extend the lease made October first, 1928, and expiring October first, 1931, to extend to October first, 1937," under the same terms and conditions contained in the above-mentioned lease, with certain modifications not material to the present discussion. This extension of the lease covered a period of six years, with expiration date subsequent to the harvesting of the 1937 wheat crop. At the time of the foreclosure sales hereinbefore referred to Johnson was in possession of the entire 480 acres. Section 3-510, *supra*, provides that: "The

purchaser from the day of sale, until a resale, or a redemption, and a redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case, shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the same period.''

■ This suit does not involve in any way the right of the tenant to remain in possession of the land which has been sold on foreclosure. Under the statute just quoted, the tenant in possession is not entitled to possession of the land beyond the period of redemption, and since in the instant case the lease which was made in 1935 does not expire until October 1, 1937, Johnson, the tenant, would not by virtue of such lease be entitled until the termination of the extended leasing period to possession of the 160 acres formerly belonging to Jerome J. Foley, for the reason that the period of redemption expired many months before that time.

■ Although the purchaser at foreclosure sale is not entitled to possession of the property as against Johnson pending expiration of the redemption period, nevertheless, under the statute above quoted, such purchaser is entitled to receive from Johnson ''the rents or the value of the use and occupation thereof'' subsequent to the sale on execution until the period of redemption has expired. The rental paid by Johnson for the use and occupation of the 160 acres which had been deeded to Jerome J. Foley was for the year 1936 to be one-third of the crop and cash rental paid for the use and occupation of the entire 480 acres, and not merely the 160 acres. Surely Johnson was not entitled to the use and occupation of the Foley tract after it was sold on

execution without the payment of rental therefor to the purchaser at such sale. However, he could not be expected to pay to Foley and the defendants the crop and cash rental called for in the 1935 lease agreement for the crop grown on the defendants' land in 1936, and in addition thereto a cash rental for the Foley tract for the same period.

██ The agreement of May 10, 1924, between the plaintiffs and the defendants, providing that the 480 acres ''shall be treated as one property for the purpose of rental'' and that ''any rental thereof . . . shall be made by mutual consent of the parties hereto and not otherwise and the proceeds of such rental . . . shall be divided'', one-third to Jerome J. Foley and two-thirds to Mrs. Bouvy, did not specify any definite duration. The parties to the contract, however, by leasing the entire 480 acres, in effect agreed that the understanding had in 1924 should continue during such lease or any extension of it. The land was leased in 1925 to Johnson for three years, and this lease was renewed from time to time, the last renewal expiring October 1, 1937. Two crops, one on the defendants' and one on the plaintiffs' land, were to be grown and harvested after the plaintiffs permitted their land to be sold on execution sale to the bank, May 9, 1936, and before the expiration of the lease of the entire 480 acres by the plaintiffs and the defendants to Johnson. The consideration, or at least a part of the consideration, which the Foleys promised the Bouvys for a share in the proceeds from crops grown on the Bouvys' land in 1936 was the right of the Bouvys to share in proceeds of crops grown on the Foley tract in 1937.

During the year 1936 the tenant was expected to summer-fallow the Foley land in order to have it ready

for the 1937 crop. This work was a part of the consideration which he promised, impliedly at least, to perform, to carry out the terms of his lease as extended to October 1, 1937. By permitting their land to be sold at foreclosure sale, the plaintiffs deprived the defendants of all the benefits of the preparatory work performed, or to be performed, by Johnson on the Foley acreage, as well as the defendants' share of the crop to be grown on that land in 1937, the last year of the lease with Johnson. Furthermore, the plaintiffs made it impossible for the defendants to carry out their part of the contract whereby they with the plaintiffs leased the whole 480 acres to Johnson for the year 1937. The plaintiffs also rendered it impossible for Johnson to carry out his part of the lease for 1937 whereby he agreed to give to the plaintiffs and the defendants two-fifths of the crop grown on the Foley tract during that year.

Although they have failed to perform their part of the contract, the plaintiffs in this suit are seeking to enforce specific performance of that same contract by the defendants by requiring them to account to the plaintiffs for the rentals received by the defendants for the use and occupation of their lands after the breach of the contract by the plaintiffs. The Foleys would require the Bouvys to share with them the rents, issues and profits realized from the Bouvys' land for 1936, regardless of the fact that the Foleys, by their own acts, have made it impossible for themselves to keep their promise to the Bouvys that the latter should receive two-thirds of the rental from the Foley land for 1937. We know of no law which permits a party to a contract to ignore and disregard the obligations imposed upon him, while enjoining upon the other party to the contract the duty to fulfill to the letter his part of the

agreement. Such a holding would penalize the faithful and reward the faithless.

The fact that the accounting asked by the plaintiffs relates to the crop grown in 1936 on defendants' land, and that no crop of any consequence was, or would have been, grown on plaintiffs' land during that year, regardless of the sale of plaintiffs' land on foreclosure proceedings, does not alter the situation. Neither on legal nor equitable principles are the plaintiffs entitled to an accounting of the proceeds from the crops grown on the defendants' land in 1936.

Nothing herein said is to be construed as an adjudication of the rights of these parties to the wheat allotment payments, if any, made in 1936 by the federal government.

The decree appealed from is reversed and one here entered in favor of the defendants; neither party to recover costs.

ROSSMAN and KELLY, JJ., not sitting.

BELT and LUSK, JJ., concur.

---

RAND, J. (dissenting). In 1915, Mrs. Johanna Gangloff executed a deed conveying 480 acres of farm land in Union county to Patrick A. Foley, one of the three grandchildren to whom she intended to make a gift of the land. She retained possession, however, until April 26, 1922, when the deed was recorded. On September 16, 1922, in conformity to the intention of his grandmother, Patrick Foley conveyed an undivided one-third interest in the land to his brother, Jerome J. Foley, and a like interest to his sister, Mrs. Bouvy. Later and in January, 1923, he sold and conveyed his own one-third interest therein to his said sister.

The land is wheat land and, as such, has to be summer-fallowed and lie idle every other year and, in order to raise a crop each year, it is necessary that one-half of the land be sowed to wheat one year and the other half the following year, and this has been the custom which has been followed up to and including the year 1936.

In May, 1924, Jerome Foley and Mrs. Bouvy, in order to enable them to borrow certain sums of money, decided to subdivide the land into three equal parts of 160 acres each and to convey one of said tracts to Jerome Foley, one to Mrs. Bouvy, and the other to Doctor Bouvy, the husband of Mrs. Bouvy. This they did, and at the same time they entered into a written agreement as follows:

"* * * That whereas Jerome J. Foley is the owner of an undivided one-third interest and Henrietta A. Bouvy is the owner of an undivided two-thirds interest" in said lands, describing them, "and it is the desire of the parties hereto that the titles be segregated and divided among them at the present time for the purpose of allowing the parties to this contract to obtain loans upon the separate tracts but it is further desired by the parties hereto that the total valuation of the said property as described shall still belong to the said parties in the proportionate parts as hereinbefore set forth, to-wit: one-third and two-thirds, and the annual rental received from the said property shall be divided as set forth and the entire property shall be treated as one property for the purpose of rental by the said parties or sale, and no rental or sale shall be made by either party of the separate parts that are deeded to the separate parties under this contract but the entire tract shall be treated in entirety for all purposes both of rental and sale, and the payment of taxes against the same, and any rental thereof or sale thereof shall be made by mutual consent of the parties hereto and not otherwise and the proceeds of such rental or

sale shall be divided in the proportion as hereinbefore set forth, to-wit: one-third to Jerome J. Foley and two-thirds to Henrietta A. Bouvy.''

Thereupon each of said three parties borrowed from the state land board the sum of $5,000 and secured payment thereof by severally executing a mortgage upon the lands separately owned by them. The Bouvys paid their two mortgages but Jerome Foley failed to pay his mortgage and the same was foreclosed and his 160 acres of land was sold to the state land board and the sale confirmed on June 10, 1936, and it has not been redeemed.

In 1924, the said owners, in conformity with their written agreement, jointly let the entire tract of 480 acres to Enoch Johnson for a term of three years and this lease was renewed every third year thereafter, the last renewal of which did not expire until the expiration of the year 1936. Up to and including the year 1935, Johnson paid all of said rentals to Doctor Bouvy and he distributed one-third thereof to Foley and the other two-thirds to himself and wife. In 1936, however, the entire rental for the 480 acres of land was paid to Bouvy but, because of said foreclosure sale, he refused to pay any part thereof to the plaintiffs and, because of such refusal, the plaintiffs brought this suit to compel him to account for Foley's one-third interest in the rentals received for that year. The cause was tried and a decree entered in favor of the plaintiffs, from which the defendants have appealed.

According to the evidence, the 160 acres of land conveyed to Jerome Foley has been devoted wholly to the raising of wheat and a crop has been raised thereon every second year up to and including the year 1935, but in 1936 it was in summer fallow and no crop of any kind was produced thereon during that year. The lease,

however, included the entire 480 acres of land and did not expire until the end of the year 1936. Consequently, and the evidence so shows, the amount of rental which Johnson paid to Bouvy for the year 1936 under said lease was not diminished or lessened to any extent or amount whatever by reason of the foreclosure sale of Foley's part of the land. The evidence shows that wheat is harvested on that land in July and the early part of August of each year and, as stated, the sale was made in June of that year and confirmed on June 10, 1936. Consequently, since the premises at the time of the sale were in the possession of a tenant holding under an unexpired lease, had a crop been raised thereon, the tenant, under section 3-510, Oregon Code 1930, would have been entitled to receive such crop and would only have been compelled to pay to the purchaser the rents or value of the use and occupation thereof from the time of sale until the expiration of his lease and since, as the evidence shows, no crops were raised thereon during the year 1936, and the amount of the rental that Johnson had stipulated to pay for the year 1936 for the entire 480 acres of land was not a cash rental but was dependent upon the amount of the crop raised on the entire tract of 480 acres, nothing did or could become due from Johnson to the state land board because of his tenancy after the sale and during the remainder of the year. Moreover, it is not contended that the state land board ever served any notice to quit upon the tenant or ever interfered with the tenant's possession of the foreclosed land at any time during the year 1936.

According to the contract existing between Foley and the Bouvys and also according to the lease contract between Foley and the Bouvys on the one hand and Johnson on the other, one-third of all rentals stipulated

by all of said parties to be paid for the entire 480 acres of land was to be paid to Foley, and this included the year 1936. Had a crop been raised on the foreclosed lands during 1936 and had Johnson been compelled to account and pay over any sum of money to the state land board for his tenancy during that year and that amount had been deducted from the rental which he was required to pay under his lease, then a different question would be presented. But when it was shown as here, that the amount which was stipulated to be paid for that year was actually paid to and received by Bouvy as rental not for his own and his wife's lands alone but for the entire 480 acres and was the identical amount which would have been paid had there been no foreclosure during that year, then it follows as a matter of natural justice and equity that one-third thereof belonged to the plaintiffs and, when received by Bouvy, was money had and received by him for their use and benefit, and, from this, it follows that the decree appealed from should be affirmed.

Mr. Chief Justice BEAN concurs in this dissent.

ROSSMAN and KELLY, JJ., not sitting.